69 P.3d 528

**Trofe Laed LONG, Plaintiff–Appellee,**

v.

**Robert Joseph LONG, Defendant–Appellant.**

No. 24487.

Intermediate Court of Appeals of Hawai'i.

April 16, 2003.

Brian Custer, Volcano, on the briefs, for Defendant–Appellant.

Samuel P. King, Jr., Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Robert Joseph Long (Robert) appeals from (1) the June 20, 2001 "Decree Granting Absolute Divorce [and] Awarding Child Custody" (Divorce Decree) and (2) the August 8, 2001 "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Set Aside Default Judgment" (FsOF, CsOL, and Order) that denied his June 25, 2001 motion for an order setting aside the default decree, for a new trial, for reconsideration, and/or for relief from the decree. We reverse in part, affirm in part, vacate in part, and remand for further proceedings.

The dispositive question is whether the family court abused its discretion when it entered its June 19, 2001 "Order Granting Oral Motion for Default" (June 19, 2001 Order). Our answer is yes.

## BACKGROUND

Robert and Plaintiff–Appellee Trofe Laed Long (Trofe) were married on May 4, 1991. Their first son was born on September 9, 1992. Their second son was born on December 24, 1995.

On July 28, 1999, Trofe filed a Complaint for Divorce seeking joint legal and joint physical custody of the children, child support in accordance with the child support guidelines, an equitable division of assets and debts, and no alimony.

On October 27, 1999, Judge Diana L. Warrington entered restraining orders in a "(Stipulated) Order for Post/Pre Decree Relief."

On December 14, 1999, Judge Lillian Ramirez–Uy "approved and so ordered" a "Stipulation Regarding Plaintiff's October 6, 1999 Motion for Pre–Decree Relief" (December 14, 1999 Stipulation). In relevant part, it awarded temporary split physical custody of the children in accordance with a specific schedule [1] and joint legal custody of them, stipulated that Robert's gross monthly income was $2,853.59 and Trofe's was $2,210, ordered Robert to pay Trofe child support of $110 per month, ordered Robert to pay 60% and Trofe to pay 40% of the children's private school expenses and medical and dental expenses not covered by Trofe's health insurance, and ordered the sale of real estate in Edmunds, Washington.

On December 28, 2000, Trofe filed her position statement in the form of a proposed divorce decree awarding joint legal and physical custody of the children, a specified division of physical custody,[2] ordering Robert to pay Trofe $290 per month child support based on Robert's monthly gross income of $2,853.59 and Trofe's monthly gross income of $2,210, and ordering the equal division of the net proceeds of the sale of the Edmunds, Washington real estate.

On February 15, 2000, attorney Marguerite Simson entered her appearance as counsel for Robert.

---

1. The December 14, 1999 "Stipulation Regarding Plaintiff's October 6, 1999 Motion for Pre–Decree Relief" ordered, in relevant part, as follows:

 The parties' joint custody timesharing schedule shall be as follows:
 (a) *Mondays and Tuesdays* with [Defendant–Appellant Robert Joseph Long (Robert)] each week from Monday after school to Wednesday morning (with a drop off at school).
 (b) *Wednesdays and Thursdays* with [Plaintiff–Appellee Trofe Laed Long (Trofe)] each week from Wednesday after school to Friday morning (with a drop off at school).
 (c) *Alternating weekends* to each party from Friday after school to the following Monday morning with a drop off at school.

2. The proposed specified division of physical custody started on an unspecified Sunday as follows: Robert had physical custody starting on that Sunday between 8:00 a.m. and 9:00 a.m. until Wednesday after school; then Trofe had physical custody until Monday after school; then Robert had custody until Wednesday after school; then Trofe had physical custody until Friday after school; then Robert had physical custody until Wednesday after school; etc.

On February 21, 2001, attorneys Marguerite Simson and Brian Custer filed Robert's position statement in the form of a proposed divorce decree ordering joint legal and physical custody but no child support, ordering each party to pay one-half of the children's medical expenses not paid by insurance and the children's private school tuition and after school child care expenses, awarding the 1990 Ford Ranger and 1986 Ford to Robert and the 1996 Odyssey to Trofe, and proposing that Trofe convey the Edmunds, Washington real estate to a person named "Vicki Pilati" for $15,000.

On March 1, 2001, following a motion-to-set conference, Judge Bode A. Uale entered Pretrial Order No. 1. In relevant part, it noted Trofe's objection to Robert's request for an order for the children to spend every other year with Robert in the State of Washington and every other year with Trofe in Honolulu, Trofe's objection to being ordered to pay any of the private school tuition for the children, and the disagreement of the parties regarding the distribution of the net proceeds of the sale of the real property. It set the following schedule:

Witness lists—no later than April 23, 2001

Settlement conference—June 7, 2001

Exhibits and calendar call—June 15, 2001

Trial—week of June 25, 2001

On April 23, 2001, Trofe filed her witness list.

At the June 7, 2001 settlement conference, attorney Brian Custer filed Robert's witness list. On June 14, 2001, Trofe filed a motion to strike Robert's witness list on the ground that it was prejudicially untimely.

On June 15, 2001, the attorney for Trofe attended calendar call and presented Trofe's exhibits to the court. Neither Robert nor his counsel attended and Robert's exhibits were not presented to the court. At Trofe's request, Judge Allene R. Suemori orally entered a default against Robert. Noting that "it's like, typical default," Judge Suemori advised counsel for Trofe to present (a) Trofe's affidavit as to "[w]hat she's alleging . . . and what she wants for the divorce" and (b) a proposed decree.

On June 18, 2001, Trofe withdrew her June 14, 2001 motion to strike and filed an "Affidavit of Plaintiff (For Uncontested Divorce)" (Trofe's Affidavit). Section 4a of Trofe's Affidavit states, "More than twenty (20) days have passed since the service of the Complaint and Summons on the Defendant. No responsive pleading has been filed. Neither Plaintiff nor Plaintiff's attorney has received any communication from Defendant or Defendant's attorney concerning this case since the Complaint was served." The third sentence of this paragraph is contradicted by the record.

Section 6 of Trofe's Affidavit notes that Robert resides in Neah Bay, Washington.

Section 10c of Trofe's Affidavit states that "[Robert's] Income and Expense Statement and Asset and Debt Statement are not filed because: [Robert] defaulted. He has failed to provide any financial information since the divorce complaint was filed 2 ½ years ago." This statement is contradicted by the December 14, 1999 Stipulation.

Section 24 of Trofe's Affidavit states, in relevant part, that

[a]t the time of the last income calculation for child support, 12/99, . . . [Robert] earned $2853.59 a month. . . . [Robert] is now $1870 behind in child support and owes me $301.82 for his share of the boys medical expenses. Based on what our income was before we moved to Hawai'i . . . and his income as a fisherman, I have conservatively estimated his gross income at $5000/mo for child support purposes and have submitted the decree awarding me the $8000 balance in our joint escrow account in Washington state.

Judge Suemori entered the June 19, 2001 Order. On June 20, 2001, Judge Suemori entered the Divorce Decree. The Divorce Decree awarded sole physical custody of the two children to Trofe, joint legal custody, and specific rights of visitation (six weeks in the summer and every other Christmas break and Spring break) to Robert. It noted that Robert was $1,870 in arrears in child support as of May 31, 2001, and would be $1,980 in arrears as of June 30, 2001. It ordered Robert to pay child support of $750 per child per month plus 75% of the children's medical

and dental expenses not covered by insurance. It stated that "[t]he remaining money held in escrow in Washington state from the sale of the parties' real estate in Washington state is awarded in full to Trofe[.]" According to Trofe, the amount was $8,000.

On June 22, 2001, the attorney for Trofe filed a certificate stating that he had mailed the following documents to attorney Brian Custer on June 21, 2001:(a) "Expedited Order Granting Motion for Default filed June 19, 2001," (b) "Decree Granting Absolute Divorce [and] Awarding Child Custody, filed June 20, 2001," and (c) "Original Order/Notice to Withhold Income for Child Support, filed June 20, 2001."

On June 25, 2001, Brian Custer, as attorney for Robert, filed a motion under Hawai'i Family Court Rules (HFCR) Rules 55, 59(a), 59(e), or 60, seeking an order setting aside the default decree, for a new trial, for reconsideration, and/or for relief from the decree. Judge Suemori heard this motion on July 19, 2001. On August 8, 2001, Judge Suemori entered the FsOF, CsOL, and Order, which state, in relevant part, as follows:

### FINDINGS OF FACT

. . . .

7. [Robert's] attorney, Brian Custer, stated in his motion and at argument on the motion, that he failed to appear at calendar call because, although he had written something about "call" in his calendar for the correct calendar call date and time in this case, he thought the notation meant that he was supposed to "call" his client with whom he was having great difficulty making contact. Mr. Custer also stated that he was distracted because he was trying to deal with the fact that he had been taken off the GAL list at Family Court. As a matter of credibility, this court finds neither of these claims convincing. Mr. Custer is an experienced Family

Court practitioner. He knows when calendar call is in relation to the trial week. He admits that he was trying to prepare for trial he knew was upon him, but states that he was having difficulty contacting his client. The fact that Mr. Custer was having such difficulty contacting his client is further indication to this court that [Robert] was not being diligent in defending this case, all to [Trofe's] detriment because [Trofe] was receiving trial materials (witness list and exhibits) at an [sic] extremely late dates beyond the court deadlines.

8. [Robert] left Hawai'i in about February 2001 and moved back to ... Washington State. Thereafter, [Trofe] was the primary caretaker of the parties' two male children. [Robert's] position for trial was that the two children, ages 8 and 5, should spend alternating years with each party, one year in Hawai'i, the next in Washington State, etc.

9. As of June 30, 2001, [Robert] was $1,980 in arrears in child support.

10. Even though the Decree which was filed June 20, 2001, clearly stated that [Robert] was not to begin summer visitation with the children until the second week in July, [Robert] removed the children from Hawai'i without telling [Trofe] he was taking the children in the last week in June, 2001. This required [Trofe] to file a complaint with the police. [Trofe] also reports that [Robert] has threatened not to return the children as required by the Decree at least three full days before the first day of school in Hawai'i.[3]

### CONCLUSIONS OF LAW

1. Under Hawai'i case law, a default judgment can be set aside only upon showing by the defaulting party 1) that there is excusable neglect on behalf of the defaulting party, 2) that the defaulting party would have prevailed on the merits, and 3)

---

**3.** The facts alleged in Finding of Fact no. 10 occurred after the entry of the default judgment. Query when and how Judge Allene R. Suemori was informed of these "facts" and query what relevance these "facts" have to the motion to set aside the default judgment.

In the answering brief, counsel for Trofe alleges events subsequent to the events alleged in Finding of Fact no. 10. When counsel for Trofe alleged facts which are not a part of the record on appeal, he violated court rules. *Orso v. City & County of Honolulu*, 55 Haw. 37, 514 P.2d 859 (1973).

that there would be no prejudice to the non-defaulting party if the default judgment is set aside. *Citicorp Mortgage, Inc. v. Bartolome*, 94 Hawai'i 422, 438, 16 P.3d 827 (2000). If any one of these three prongs is not shown by the defaulting party, the trial court does not abuse its discretion in denying the motion to set aside the default judgment. The trial court has much less latitude in setting aside a default judgment than it does in setting aside a mere default.

2. [Robert] failed to show any "excusable neglect" in this case. Mr. Custer had the calendar call noted on his calendar. His reasons for missing calendar call are not credible and even if they were credible, they do not rise to the level of "excusable neglect." Failure to appear at calendar call is not a mere technicality. This is the date on which exhibits are due, exchanged by the parties, and supplied to the court. This is [the] date on which a trial judge and trial date are chosen based on the availability of judges and the schedules of the parties and their attorneys—attorneys must be present at calendar call to select judges and set trial dates. Failure of a party to appear at calendar call is not only prejudicial to the party who appears but is also extremely disruptive to the Family Court's busy calendar. Calendar call in Family Court is a crucial deadline with which all parties in a divorce proceeding must seriously comply. [Robert] showed no good cause for missing calendar call, doing nothing about missing calendar call after he had missed it, and failing to supply exhibits to the court or [Trofe] in a timely manner.

3. [Robert] failed to show that he had any chance of prevailing at trial. [Robert] had already failed to defend this case in two important respects—he failed to file a timely witness list which was about to be stricken, and he failed to submit any exhibits at calendar call. Any attempt to present exhibits at trial would have been met with an inevitable objection by [Trofe]. Even if there had been a trial in this case, [Robert] so far failed to defend his cause that he would not have been able to call any witnesses or present any exhibits.

[Trofe], on the other hand, would have been allowed to present all of her witnesses and introduce all of her exhibits. [Robert's] position that the children spend alternate years in Hawai'i [and] in Washington State was not a position that was likely to prevail at trial in any case.

4. Granting of [Robert's] motion to set aside the default judgment would be prejudicial to [Trofe]. It would be inappropriate to set a new trial date and allow [Robert] to present witnesses and exhibits thereby obviating his failure to present a witness list and exhibits to [Trofe] in a timely manner prior to the originally set trial date. [Robert] has also demonstrated a real contempt for this court's orders— [Robert] is in arrears in his child support, [Robert] has removed the children from Hawai'i without telling [Trofe] and in violation of the schedule set out in the Decree, [Robert] has apparently threatened not to return the children as provided in the Decree, and [Robert] failed to meet deadlines set by this court to file a witness list, to present exhibits to [Trofe] and to this court, and to appear at calendar call. To now require [Trofe] to go back and try this matter in the face of [Robert's] actions in this case would be prejudicial to [Trofe].

(Footnote added.)

## RELEVANT HAWAI'I FAMILY COURT RULES

**Rule 37. Failure to make discovery; sanctions.**

. . . .

(b) *Failure to comply with order.*

. . . .

(2) SANCTIONS BY COURT IN WHICH ACTION IS PENDING. If a party . . . fails to obey an order to provide . . . discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the

action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

. . . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

. . . .

## Rule 54. Judgment; costs.

(a) *Definition; form.*

"Judgment" as used in these rules includes a decree and any order from which an appeal lies. A judgment shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings.

. . . .

(c) *Demand for judgment.* A judgment by default shall not be different in kind from or exceed in amount from that which was prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not

demanded such relief in the party's pleadings.

. . . .

## Rule 55. Default.

(a) *Entry.* When a party against whom a judgment is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by motion supported by affidavit or as otherwise provided hereinbelow, the court shall enter the party's default.

(b) *Judgment.* In a contested or uncontested action, where it appears from the record and by testimony (or by affidavit in an uncontested matrimonial action) that the adverse party has been duly served with the complaint or dispositive motion, and the adverse party has failed to appear or otherwise defend as provided by these rules, the court may grant a default and proceed with a proof hearing, when a hearing is required, and enter a default judgment. . . .

(c) *Setting aside default.* For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

(d) *Plaintiff, cross-plaintiff.* The provisions of this rule apply whether the party entitled to the judgment by default is a plaintiff or a party who has pleaded a cross-complaint. In all cases a judgment by default is subject to the limitations of Rule 54(c).

### RELEVANT PRECEDENT

[I]n view of the strong policy favoring resolution of cases on their merits, and since the magnitude of due process concerns grows with the severity of the sanction, courts uniformly have held that orders dismissing the action or granting judgments on default as sanctions for violating discovery orders are generally deemed appropriate only as a last resort, or when less drastic sanctions would not ensure compliance with a court's orders. It follows then that a trial court's range of discretion is appreciably narrower if it

chooses to impose these most of severe sanctions.

7 J. MOORE, MOORE'S FEDERAL PRACTICE § 37.50[2][a] at 37–77–78 (3d ed.2002) (footnotes omitted).

No particular state of mind or degree of culpability is a necessary prerequisite to an award of sanctions, at least when the sanction imposed is not severe. Thus, a finding of willfulness or contumacious conduct is not necessary to support sanctions that are less severe than dismissal or entry of a default judgment.

Culpability is pertinent, however, to the severity of the sanction selected. The Supreme Court has held that Rule 37 "should not be construed to authorize dismissal of [a] complaint because of [a party's] noncompliance with a pretrial production order when it has been established·that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of [the noncomplying party]." This language has been widely construed to require a showing of bad faith, willfulness, or substantial fault before a dismissal or default sanction may be properly imposed.

. . . .

. . . [T]he factors applied by the court in determining whether to impose dismissal as a sanction should be applied more stringently when the attorney's conduct is the sole basis for the dismissal.

7 J. MOORE, MOORE'S FEDERAL PRACTICE § 37.50[2][b] at 37–80–84 (3d ed.2002) (footnotes omitted).

"Several circuits have held that in most circumstances, district courts should give advance warning before resorting to dismissal or default sanctions for a party's failure to comply with a discovery order." 7 J. MOORE, MOORE'S FEDERAL PRACTICE § 7.50[2][d] at 37–86 (3d ed.2002) (footnote omitted).

While the severity of the punishment inflicted by any particular sanction may vary dramatically with the circumstances of the specific case, the following list describes various types of sanctions in what is generally considered ascending order of harshness:

Entering on the record a verbal or written reprimand, warning, and admonition, that would serve as a predicate for imposing more severe sanctions if the party again failed to comply with a discovery order.

Staying further proceedings until the order is obeyed.

Requiring the disobedient party or the party's counsel to pay the reasonable expenses incurred by the innocent party as a result of the failure to comply. ·

Precluding admission of specific evidence.

Deeming certain facts to be established for purposes of the action.

Prohibiting the disobedient party from supporting or opposing designated claims or defenses.

Striking pleadings or parts of pleadings.

Dismissing all or part of the action.

Rendering a default judgment against the disobedient party.

Generally, courts are to impose the least severe sanction that will achieve the purposes of the sanctions rules in the circumstances of the case at hand.

7 J. MOORE, MOORE'S FEDERAL PRACTICE § 37.51[1] at 37–89–90 (3d ed.2002) (footnotes omitted).

In *Shin v. Shin,* 96 Hawai'i 122, 27 P.3d 398 (App.2001), the defendant's counsel was at the September 2, 1999 hearing of the plaintiff's motion to set but the defendant was not there and failed to file a position statement. Although the court granted the plaintiff's HFCR Rule 37(b)(2)(c) motion for entry of default, it ordered the defendant to appear in court at the settlement conference on September 23, 1999, to show cause why default should not enter. It noted that the defendant's failure to appear on September 23, 1999, may result in the entry of default judgment against him. On September 20, 1999, the court approved the defendant's request to appear at the September 23, 1999 conference by telephone. On September 23, 1999, the defendant's attorney was present but the defendant failed to be there either in

person or by telephone. The court entered a default against the defendant, granted the divorce in all its parts, and subsequently denied the defendant's motion for reconsideration. On appeal, this court affirmed all of the parts of the October 27, 1999 divorce decree not stayed by the plaintiff's bankruptcy case.

## DISCUSSION

Robert challenges (1) the June 19, 2001 Order, (2) the resulting Divorce Decree, and (3) the FsOF, CsOL, and Order that denied his June 25, 2001 motion for an order setting aside the default decree, for a new trial, for reconsideration, and/or for relief from the decree.

Robert contends that HFCR Rule 55(a) does not apply. We agree. Robert had previously appeared in the case with counsel. *First Hawaiian Bank v. Powers*, 93 Hawai'i 174, 998 P.2d 55 (App.2000). Moreover, the hearing at which Robert was defaulted was not a hearing on a dispositive motion. In this case, the relevant rule is HFCR Rule 37.

■ As noted in Conclusion of Law no. 1 above,

Hawai'i courts follow the test promulgated in *BDM, Inc. v. Sageco, Inc.*, 57 Haw. 73, 77, 549 P.2d 1147, 1150 (1976) to determine whether to set aside a default judgment:

a motion to set aside a default entry or a default judgment may and should be granted whenever the court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act.

*Citicorp Mortgage, Inc. v. Bartolome,* 94 Hawai'i 422, 438, 16 P.3d 827, 843 (App.2000).

Before applying the *BDM, Inc.* test quoted above, however, it must be decided that the entry of the default was not an abuse of discretion. Otherwise, a court could impose the *BDM, Inc.* burden upon the defendant simply by abusing its discretion and entering a default against the defendant. Thus, the question is whether, under HFCR Rule 37, the family court abused its discretion when it entered its June 19, 2001 Order. Our answer is yes.[4]

*Shin* did not present this court with this issue. Moreover, in *Shin*, the defendant failed to attend the September 2, 1999 motion-to-set conference; the court ordered the defendant to attend a September 23, 1999 settlement conference to show cause why default should not enter; the court advised defendant that his failure to attend the conference on September 23, 1999, may result in the entry of default judgment against him; and, on September 20, 1999, the court approved the defendant's request to appear at

---

4. Had we decided the June 19, 2001 "Order Granting Oral Motion for Default" was not an abuse of the court's discretion under Hawai'i Family Court Rules (HFCR) Rule 37, the issue would have been whether the June 20, 2001 "Decree Granting Absolute Divorce [and] Awarding Child Custody" (Divorce Decree) violated HFCR Rule 54(c)'s command that "[a] judgment by default shall not be different in kind from or exceed in amount from that which was prayed for in the demand for judgment." This is because the Divorce Decree was materially different in kind from the prayers in Trofe's (a) July 28, 1999 Complaint for Divorce and (b) December 28, 2000 position statement in the form of a proposed divorce decree, and these are the only two documents in the record stating Trofe's position.

In *Occidental Underwriters of Hawai'i, Ltd. v. American Security Bank*, this court stated, in relevant part, as follows: "Upon the entry of default, [cross-claim defendant] had lost its standing to

contest the fact of its liability, *Clifton v. Tomb*, 21 F.2d 893 (4th Cir.1927), but still had standing to contest the amount of its liability, *Trans World Airlines Inc. v. Hughes*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973)." 5 Haw.App. 431, 433, 696 P.2d 852, 854 (1985). This is true when the party who obtained the default seeks a judgment "different in kind from or exceed[ing] in amount that which was prayed for in the demand for judgment."

In *Pogia v. Ramos*, this court stated, in relevant part, as follows: " '[A] party in default for failure to appear is not entitled to receive a copy of any paper in the action except a pleading asserting a new or additional claim for relief. . . .' " 10 Haw. App. 411, 418–19, 876 P.2d 1342, 1346 (1994). This is true when the party who obtained the default seeks a judgment not "different in kind from or exceed[ing] in amount that which was prayed for in the demand for judgment."

the September 23, 1999 hearing by telephone. After the defendant failed to attend the September 23, 1999 conference, the court entered default judgment.

██ In this case, the court's March 1, 2001 Pretrial Order No. 1 fixed the following schedule in the case:

Witness lists—no later than April 23, 2001

Settlement conference—June 7, 2001

Exhibits and calendar call—June 15, 2001

Trial—week of June 25, 2001

Robert did not file his witness list until the settlement conference on June 7, 2001. Trofe's June 14, 2001 motion to strike Robert's witness list on the ground that it was prejudicially untimely was scheduled to be heard on June 19, 2001. Robert lived in the State of Washington and reasonably was not expected to personally attend the June 15, 2001 calendar call. When Robert's counsel failed to attend the June 15, 2001 calendar call and Robert's exhibits were not filed, the court, without prior warning or notice to Robert or his counsel, summarily entered a default against Robert. Thereafter, without notice to Robert or his counsel, the case proceeded as a "typical default" case by way of Trofe's Affidavit and a proposed decree. In other words, it was Robert's attorney who failed to attend the conference, and there was no notice to Robert or his attorney prior to the conference that default was being considered. In these circumstances, we conclude that the court abused its discretion when it summarily entered a default against Robert.

## CONCLUSION

In light of (1) the provision in Hawai'i Revised Statutes § 580–41(1) (1993) that "[t]he family court shall decree a divorce from the bond of matrimony upon the application of either party when the court finds: ... [t]he marriage is irretrievably broken[,]" (2) the fact that the dissolution of the marriage is a discrete part of the divorce case, *Eaton v. Eaton,* 7 Haw.App. 111, 748 P.2d 801 (1987), and (3) the termination of the marriage was not a disputed issue in this case, we affirm the termination of the marriage.

However, based on the discussion above, we (1) reverse the June 19, 2001 Order; (2) vacate all parts of the Divorce Decree, except the following parts:

1. *DECREE*

A decree of divorce is hereby granted to Plaintiff on the ground that the marriage is irretrievable [sic] broken. The bonds of matrimony between Plaintiff and Defendant are hereby dissolved and the parties hereto are restored to the status of single persons, and either party is permitted to marry from and after the effective date of this decree.

 . . . .

11. *NAME CHANGE*

Plaintiff shall retain her married surname.

 . . . .

13. *EFFECT*

This decree shall be effective after signature and filing[;]

(3) vacate the FsOF, CsOL, and Order; and (4) remand for further proceedings consistent with this opinion.