277 P.3d 968

Julianne Nguyen BERRY,
Respondent/Plaintiff–
Appellee,

v.

Wayne Foster BERRY,
Petitioner/Defendant–
Appellant.

No. SCWC–10–0000044.

Supreme Court of Hawai'i.

May 11, 2012.

Timothy J. Hogan, for petitioner.

Carl H. Osaki, for respondent.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, and McKENNA, JJ.

1. The Honorable Linda K.C. Luke presided.

Opinion of the Court by ACOBA, J.

We hold that (1) the Family Court of the First Circuit (the court) [1] did not abuse its discretion in denying Petitioner's October 9, 2009 Motion to Set Aside Divorce Decree (Motion to Set Aside) seeking to set aside the November 21, 2008 Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree) because Petitioner/Defendant–Appellant Wayne Foster Berry (Petitioner) had notice that his failure to appear at a scheduled settlement conference would result in default, and the court acknowledged that Petitioner's motion was for Hawai'i Family Court Rules (HFCR) Rule 60(b) relief, although Petitioner had failed to cite HFCR Rule 60(b) in support of the motion; (2) whether the Divorce Decree exceeded the relief previously requested by Respondent/Plaintiff–Appellee Julianne Nguyen Berry (Respondent) in her Complaint and Proposed Decree with respect to the award of copyrights held in Petitioner's name (hereinafter, "the copyrights") need not be decided; inasmuch as (3) the court abused its discretion in declining to set aside that part of the Divorce Decree that transferred Petitioner's entire ownership interest in the copyrights to Respondent in violation of federal law. We thus vacate the August 17, 2011 judgment of the ICA filed pursuant to its July 28, 2011 Summary Disposition Order (SDO),[2] affirming the September 22, 2010 Order Denying Motion to Set Aside and the Findings of Fact and Conclusions of Law filed by the court, in part, insofar as it held the court properly awarded Respondent the copyrights. We vacate that portion of the Divorce Decree that awarded Respondent all ownership interest in the copyrights, and remand to the court for a determination of the economic interest in the copyrights to which Respondent is entitled. We affirm the Divorce Decree in all other respects.

I.

The following essential matters, some verbatim, are from the record and the submissions of the parties.

2. The SDO was filed by Presiding Judge Daniel R. Foley and Associate Judges Alexa D.M. Fujise and Lisa M. Ginoza.

A.

Petitioner and Respondent were married on December 24, 1992. On January 20, 2006, Respondent filed a complaint for divorce (Complaint). On September 25, 2006, the court filed an Order of Dismissal pursuant to HFCR Rule 41(e)(1) for want of service.[3]

On October 5, 2006, Respondent filed an Ex Parte Motion to Reinstate for Good Cause Complaint for Divorce and Summons Filed on 1/20/2006 and to Extend Time to Serve Complaint for Divorce and Summons Filed on 1/20/2006 (Motion to Reinstate Complaint and Extend Time to Serve). Attached was the affidavit of Respondent's counsel, Cheryl Brawley (Brawley),[4] in which she declared (1) that the last known address of Petitioner was an address on Muolea Place in Honolulu, Hawai'i (Muolea address), (2) a certified copy of the Complaint was sent to Process Service Exclusive, LLC (PSE) to be personally served on Petitioner at that address, (3) on April 7, 2006, PSE notified Brawley it had been unable to serve Petitioner, it made nine attempts to serve Petitioner at the Muolea address, Petitioner no longer lived at that address, and it attempted to serve Petitioner at the United States District Court, District of Hawai'i on May 5, 2006, but was unable to do so, and (4) although PSE was told that Petitioner no longer resided at the Muolea address, Respondent reasonably believed that Petitioner continued to reside there. Respondent sought reinstatement of her Complaint and additional time to serve Petitioner. The court granted Respondent's motion in an order filed on October 5, 2006, which reinstated Respondent's Complaint and provided Respondent until January 20, 2007[5] to serve Petitioner with the Complaint.

On March 6, 2007, Respondent filed a Motion for Personal Service Without the State and Affidavit (Motion for Personal Service), seeking an order pursuant to HRS § 580–3(b)[6] and HFCR Rule 4(e)[7] authorizing personal service by an officer or person authorized to effect service of legal process under the laws of Petitioner's state of residence, Florida. The motion was granted on March 14, 2007.[8] An Affidavit of Service was filed

3. HFCR Rule 41(e)(1) (2006) provides as follows:

A diligent effort to effect service shall be made in all actions, and *if no service be made within 6 months after an action or post-decree motion has been filed then after notice of not less than 10 days to the filing party at the last known address, the same may be dismissed.* Such a dismissal may be set aside and the action reinstated by order of court for good cause shown on motion duly filed in said action within 30 days after mailing of the order of dismissal and notice to the last known address of the parties or parties' counsel.
(Emphasis added.)

4. Respondent's appellate counsel, who also argued on Respondent's behalf at oral argument in this case, is Carl H. Osaki.

5. The order actually read "January 20, 2006[.]" It is apparent that the court meant January 20, 2007, and Petitioner conceded in his Non–Hearing Motion to Dismiss Expired Complaint for Divorce (Motion to Dismiss) that January 20, 2006 date was "obviously a typographical error[.]"

6. HRS § 580–3(b) (2006 Repl.) provides with respect to service of the complaint:

If service by an authorized process server is not feasible or is inconvenient or *if the defendant is without the State, the court may author-*ize the service to be made by any other responsible person, or the court may authorize notice of the pendency of the action and of a time and place of hearing, which shall be not less than twenty days after the giving of personal notice, to be given to the defendant personally by such person and in such manner as the court shall designate and the case may be heard and determined at or after the time specified in the notice.
(Emphasis added.)

7. HFCR Rule 4(e) 2007 provides:

(e) Summons: Other Service. *Whenever a statute or an order of court provides for service upon a party not an inhabitant of or found within the State of a summons,* or of a notice, or of an order in lieu of summons, *service shall be made under the circumstances and in the manner prescribed by the statute or order.* Whenever a statute or an order of court requires or permits service by publication of a summons, or of a notice, or of an order in lieu of summons, any publication pursuant thereto shall be made under the circumstances and in the manner prescribed by the statute or order.
(Emphases added.)

8. In his Application, Petitioner complains that Petitioner's Motion for Personal Service was granted by the court nearly three months after the time for service had expired under the order granting Respondent's Motion to Reinstate Com-

with the court on August 31, 2007, indicating that Petitioner had been personally served with the complaint.

### B.

On September 12, 2007, Petitioner filed, pro se, a Non–Hearing Motion to Dismiss Expired Complaint for Divorce (Motion to Dismiss). Petitioner argued (1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief may be granted, and (7) failure to join a party under Hawaiʻi Rules of Civil Procedure (HRCP) Rule 19.

### C.

On February 4, 2008, Respondent filed with the court a Motion to Set and Notice of Motion (Motion to Set), her Position Statement, by way of a proposed decree, (Proposed Decree), Income and Expense Statement, and Asset and Debt Statement. In the Proposed Decree, Petitioner indicated she was seeking, *inter alia,* sole legal and physical custody of the minor children of the parties, child support, expenses for tutoring for the children, medical and dental insurance coverage for the minor children, and alimony. With respect to the copyrights, Respondent indicated that "[Petitioner] shall be awarded his interest in any copyrights/patents obtained during the marriage and [Respondent] waives any interest therein, provided that within 15 days of the effective date of [the] Divorce Decree, [Petitioner] pays [Respondent] a sum representing her interest in [the] said property[.]"

The court set the matter for a hearing on March 27, 2008. On March 10, 2008, Petitioner filed, pro se, a Motion to Strike [Respondent's] Motion to Set and Notice of Motion for a Dismissed and Expired Complaint for Divorce (Motion to Strike).[9] In his Motion to Set, Petitioner listed 5500 Military Trail in Jupiter, Florida (Military address) as his address.

Petitioner did not appear at the March 27, 2008 hearing. The court minutes indicate that the court attempted to contact Petitioner by telephone, the bailiff left a message for Petitioner on his answering machine informing him that his case had been set for 9:00 a.m. that day, it was 10:15 a.m., Petitioner's case was being heard at the moment, and Respondent should call the court back at the given number. That same day, the court filed Pretrial Order No. 1 setting forth various deadlines and court dates for the case, including a settlement conference date of June 19, 2008 and trial date of July 7, 2008. The court also filed orders dismissing Petitioner's Motion to Dismiss and Motion to Strike for "lack of prosecution." On April 1, 2008, copies of the foregoing orders were mailed to Petitioner at his last known address, the Military address.

Petitioner was not present at the June 19, 2008, settlement conference. On June 23, 2008, the court filed Pretrial Order No. 2,

---

plaint and Extend Time for Service without further extension by the court. Petitioner did not expressly raise any challenge to this in his Motion to Dismiss. Arguably, Petitioner waived any challenge to service of process. However, Petitioner did note that Respondent was granted an order to serve him out of the state after the extension of the time for service had lapsed. Consequently, the court implicitly rejected any argument challenging the sufficiency of service by denying Petitioner's Motion. Moreover, it does not appear that Petitioner's due process rights were materially affected inasmuch as Petitioner was not residing in Hawaiʻi when Respondent was attempting to serve him with the Complaint, there is evidence that Respondent had been attempting to serve Petitioner for months, and Petitioner was eventually personally served with the Complaint.

9. In his motion, Petitioner asserted that he filed a Motion to Dismiss, neither the court nor Respondent responded to his motion, several clerks of the court confirmed Respondent's Complaint was dismissed, Petitioner received a letter from the court indicating that "no further action will be taken," in the case, he received Respondent's Motion to Set and Notice of Motion at his home in Florida by mail, several clerks of the court confirmed again that the Complaint had expired and was still "dismissed," the clerks cautioned him that they could not give legal advice but suggested he contact Respondent's attorney and ask her to withdraw the Motion to Set, Petitioner did so by letter, and Respondent's attorney did not respond. As discussed herein, the court properly dismissed Petitioner's Motion to Dismiss for lack of prosecution for Petitioner's failure to attend the hearing on the motion.

continuing trial to the week of October 27, 2008 and settlement conference to September 18, 2008. The order stated in part, *"If [Petitioner] fails to appear at settlement conference, he shall be defaulted."* (Emphasis added.) A Statement of Mailing was filed by Brawley on June 25, 2008, indicating that a copy of Pretrial Order No. 2 was mailed to Petitioner's Military address.[10]

The court minutes indicate that Petitioner was "not present" at the September 18, 2008 settlement conference. On November 21, 2008, the court filed the Divorce Decree. The Divorce Decree does not reflect that the court entered default against Petitioner. However, the September 18, 2008 court minutes noted that three calls were made for Petitioner "with no response[,]" the "court minutes reflect that at last hearing the court stated that if [Petitioner] fails to appear at the next court hearing court will enter default against him and the divorce will be granted[, the] court defaulted [Petitioner]," and the "divorce is granted[.]"

The Divorce Decree granted a divorce to Respondent and Respondent was awarded, *inter alia,* sole custody of the parties' minor children, child support, alimony, and "any and all interest in *all of [Petitioner's] rights, title and interest to any copyrights,* patents, or any other intellectual property that he authored or acquired *during the period of the parties' marriage,* including but not limited to" the "copyrights covered by the 37 copyright registrations filed in the United States Copyright Office" and "all rights, title, and interest of [Petitioner], in, to or related to any software covered by or related to the End User License Agreement." (Emphases added.)

**D.**

**1.**

On October 9, 2009, Petitioner filed, pro se, a Motion to Set Aside. In his motion, he argued that the Divorce Decree should be set aside because (1) Brawley committed fraud on the court by "claim[ing] to have noticed [Petitioner] with her filings and communications" when "she has not[,]" (2) he was not served with a copy of the Divorce Decree, (3) the children for whom he owed child support were not his biological children nor did he adopt them, and (4) federal law, namely, 17 U.S.C. § 201(e),[11] prohibits a state court from involuntarily transferring his copyrights with the sole exception of transfers made pursuant to Title 11 of the United States Bankruptcy Code. In addition, he incorporated by reference his Motion to Dismiss, in which he re-alleged the defenses previously noted.

**2.**

A hearing on Petitioner's Motion to Set Aside was originally set for January 13, 2010.[12] An order was filed on January 13, 2010, continuing the hearing to February 10, 2010. The order indicates that Timothy Hogan (Hogan) appeared at the hearing as counsel for Petitioner. This is the first time Petitioner appears to have been represented by counsel inasmuch as all prior filings, including his Motion to Set Aside, were filed pro se. The order further indicated that Petitioner would be permitted to appear by telephone and must make arrangements for such appearance.

On January 27, 2010, Respondent filed a Responsive Memorandum in Opposition to Petitioner's Motion to Set Aside, arguing (1) Brawley did attempt to serve Petitioner with

**10.** HFCR Rule 5 provides that motions may be served "by mailing it to the attorney or party at the attorney's or party's last known address[.]"

**11.** 17 U.S.C. § 201(e) provides:
(e) Involuntary Transfer.—When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, *has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise*

*rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given* effect under this title, except as provided under title 11. (Emphases added.)

**12.** The court minutes indicate that counsel for both Respondent and Petitioner were present at the hearing, the hearing was continued to February 10, 2010, and Petitioner was permitted to attend the February hearing by telephone.

pertinent documents;[13] (2) service was not defective because HRS § 580-3 allows for service of process outside Hawai'i; (3) the court had jurisdiction over the Complaint pursuant to HRS § 580-3.5[14] since both parties were residents of Hawai'i at the time the Complaint was filed;[15] and (4) the court properly entered default judgment against Petitioner and Petitioner's attempts to contest the court's judgment were " '[t]oo little, too late.' "

Respondent failed to respond to Petitioner's third argument regarding not having been served with the Divorce Decree or his fifth argument regarding not being the biological or adoptive father of the children for whom he owed child support under the Divorce Decree.

### 3.

The hearing on Petitioner's Motion to Set Aside took place as scheduled on February 10, 2010. Petitioner appeared at the hearing by telephone. Petitioner argued that the Divorce Decree should be set aside because

Petitioner was never served with the Divorce Decree, there was "[n]o attempt at all at an equitable division," Petitioner had meritorious defenses regarding child support and alimony, the Divorce Decree exceeded the relief sought in the Complaint and Proposed Decree, and the transfer of Petitioner's copyrights to Respondent violated federal law.

The court told Petitioner, now represented by counsel, that it did "not see any reference in [the] October 9, 2009 [Motion to Set Aside] to any specific rule." The court then stated that it found "good cause to deny the motion to set aside the decree[,]" stating, "On the face of the motion I do not believe [Petitioner] has cited sufficiently to any Family Court rule or statutory cite that would obligate this court to set aside the divorce decree." After pointing out that Petitioner had failed to cite a court rule, the court noted, "substantively, [Petitioner,] you're arguing for [HFCR Rule] 60B relief." The court then ruled, "The court nonetheless is denying the relief sought[.] . . ."[16]

**13.** As to Petitioner's first argument, Respondent contended that (a) several attempts were made to serve Petitioner to no avail, (b) Petitioner was personally served with the Complaint on August 14, 2007, (c) in Petitioner's March 10, 2008 Motion to Strike, he provided the Military address and a copy of Pretrial Order No. 1 was sent to that address, (d) on April 11, 2008, Petitioner acknowledged by letter that he received copies of the Motion to Set and the orders dismissing his Motion to Strike and Motion to Dismiss, (e) Petitioner stated in that letter that he checks his mail daily, but " 'in addition to regular mail . . . please email anything you file[;]' " he did not mention his landlord facing foreclosure or his failure to receive mail at his home address, (f) on June 5, 2009, Brawley sent a copy of her Settlement Conference Statement to the facsimile number provided by Petitioner and the transmission sheet shows that the facsimile was in fact sent, (g) on June 25, 2008, a copy of Pretrial Order No. 2 was mailed to the Military address, which set forth new dates for the settlement conference and trial, and further indicated that default judgment would be entered against him if he failed to appear at the settlement conference.

**14.** HRS § 580-3.5 (2006 Repl.) provides:

In any proceeding in the family court, the court shall have *the power to render a personal judgment against a party who is outside of this State and over whom jurisdiction is acquired by service of process in the manner set forth in section 580-3(b) or (c), if the party was personally served with a copy of the summons or order*

*to show cause and complaint* or other pleading upon which the judgment is based and *if the party was a domiciliary of this State* (1) at the time that the cause of action which is the subject of the proceeding arose, or (2) at the *time of the commencement of the proceeding,* or (3) at the time of service.

(Emphases added.) *See* note 8, *supra*, for the text of HRS § 580-3(b). HRS § 580-3(c) provides with respect to service of the complaint:

If the defendant is without the circuit, the court may authorize service by registered or certified mail, with request for a return receipt and direction to deliver to addressee only. The return receipt signed by the defendant shall be prima facie evidence that the defendant accepted delivery of the complaint and summons on the date set forth on the receipt. Actual receipt by the defendant of the complaint and summons sent by registered or certified mail shall be equivalent to personal service on the defendant by an authorized process server as of the date of the receipt.

**15.** Respondent noted that Petitioner "continued to profess his residency status even until March 29, 2007, when he filed his Complaint and Demand for Jury Trial in Honolulu District Court" in a non-family court-related case.

**16.** HFCR Rule 60(b) provides:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud. On motion and upon such terms as are just,

4.

The court filed the following Findings of Fact (findings) and Conclusion of Law (conclusions) regarding Petitioner's Motion to Set Aside on September 22, 2010.

## FINDINGS OF FACT

1. The parties were married on December 24, 1992, in Las Vegas, Nevada.

2. [Respondent] became a resident of the State of Hawai'i in 1975, and [Petitioner] became a resident of the State of Hawai'i in 1989.

3. On January 20, 2006, [Respondent] filed the Complaint for Divorce.

4. *Numerous attempts were made in an effort to serve* [Petitioner].

5. [Respondent] hired a process server to effectuate service of process. *Nine (9) attempts were made to effectuate service of process on [Petitioner] at his residence,* located at [the Muolea address].

6. When [Respondent] learned that [Petitioner] was required to appear at Federal District Court in Honolulu, she sent a process server to the federal district court.

7. The process server waited for three (3) hours. But again his efforts failed.

8. On October 5, 2006, [Respondent] filed her first request to reinstate the matter, and to extend time to serve [the C]omplaint ... and summons upon [Petitioner].

9. [Respondent] learned that [Petitioner] relocated to Florida.

10. On March 14, 2007, [Respondent] filed her Motion for Personal Service without the State.

11. *On August 14, 2007, [Petitioner] was served in Florida.*

12. *[Petitioner] filed his Motion to Dismiss ... (No hearing was held).*

13. On February 6, 2008, [Respondent] filed her Motion to Set.

14. *On March 10, 2008, [Respondent] filed his Motion to Strike[.]*

15. *[Petitioner] provided his contact information as: [Military address], Telephone number [xx], facsimile transmission number [xx [17]].*

16. *[Petitioner's Motion to Strike] was set for hearing on March 27, 2008,* before the Honorable R. Mark Browning.

17. *[Petitioner] failed to appear at the hearing,* however, Judge Browning attempted to telephone [Respondent] at the telephone number he provided.

18. No one answered the telephone, and the court terminated the call.

19. *[Petitioner's] motion was denied for failure to prosecute* the matter.

20. *Pre-trial Order No. 1 was issue [sic], which established all deadlines and set this matter for trial.*

21. *On April 11, 2008, [Petitioner]* communicated with [Brawley], *acknowledging that he received,* via mail, copies of a transmittal," *copy of an Order to Set, copy of an Order denying [Petitioner]'s motion to dismiss.*

22. *On June 5, 2009, [Respondent],* through her attorney, *faxed an unfilled [sic] copy of her Settlement Conference*

the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. For reasons (1) and (3) the averments in the motion shall be made in compliance with Rule 9(b) of these rules. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

**17.** Petitioner's contact information is deleted for purposes of privacy.

*Statement to* the telephone number provided by *[Petitioner]*.

23. *On June 25, 2008, a copy of Pre-Trial Order No. 2 was mailed to [Petitioner] at his [Military] address* he previously provided.

24. *On September 5, 2008, [Petitioner] communicated with [Brawley], referring to his [Military] address.*

25. The parties were divorced on November 21, 2008.

26. Copies of the [Divorce Decree] were mailed, via certified mail, parcel number 7003050000029036, to [Petitioner], at his [Military] address.

27. *On December 1, 2008, parcel number 7003050000029036 was delivered to [Petitioner' Military] address.*

28. [Petitioner] was served with [Respondent]'s Motion and Affidavit for Post Decree Relief.

29. The hearing on Respondent's Motion [to Enforce] was scheduled for February 10, 2010.

30. *[Petitioner] filed his Motion to Set Aside on October 7, 2009.*

### CONCLUSIONS OF LAW

Based upon the foregoing [findings], the preponderance of the evidence, notice of the records and files, and arguments of counsel, the Court hereby enters the following [conclusions]:

1. *The Court had jurisdiction over the parties and the subject matter* herein.

2. *The Court had personal jurisdiction over [Petitioner]* when the Complaint for Divorce was filed on January 20, 2006, because [Petitioner] by his own admission, continued to reside in Hawaiʻi until March 29, 2007, when he filed his Complaint and Demand for Jury Trial in Honolulu Federal Court [in an unrelated matter].

3. [Petitioner]'s Motion to Set Aside ... was denied on March 27, 2008, and [Petitioner] did not file a motion for recon-

sideration. Therefore, Judge Browning's decision denying [Petitioner]'s motion stands[.]

4. *[Petitioner] failed to cite to any legal authority which would have provided a basis for relief.*

5. *Therefore, [Petitioner]'s Motion [to Set Aside] is denied.*

(Emphases added.)

### II.

Petitioner filed a notice of appeal on September 28, 2010.

### A.

Petitioner argued in his opening brief that (1) the Divorce Decree was void because it went beyond the relief requested in the Complaint and Proposed Decree with respect to the copyrights, (citing *In re Genesys Data Technologies, Inc.,* 95 Hawaiʻi 33, 40, 18 P.3d 895, 902 (2001), *Bank of Hawaii v. Shinn,* 120 Hawaiʻi 1, 10, 200 P.3d 370, 379 (2008) and *Long v. Long,* 101 Hawaiʻi 400, 69 P.3d 528 (App.2003)); (2) even if the Divorce Decree was not void as violative of Petitioner due process rights, Petitioner was entitled to relief pursuant to HFCR Rule 60(b), in light of his meritorious defenses;[18] (3) the court abused its discretion in entering default against him for failing to travel from Florida to Hawaiʻi, instead of allowing him to appear by telephone, and (4) the court abused its discretion in denying his Motion to Set Aside because its sole rationale for denying his Motion to Set Aside was his failure to cite "the rule [up]on which his motion was based."

### B.

In its SDO, the ICA noted that both Petitioner's and Respondent's briefs did not conform with the requirements of Hawaiʻi Rules of Appellate Procedure (HRAP) Rules 28(b) and 32(a). The ICA noted that under HRAP

---

18. Petitioner claimed defenses included that (a) Respondent admitted in her Complaint that Petitioner was not the father of the children, (b) Respondent met with attorneys representing the "adjudicated copyright infringer" of his copyrights possibly resulting in a decrease to the marital estate, (c) federal law prohibited the court from involuntarily transferring his copyrights to Respondent, and (d) there is no evidence in the record establishing a basis for child support, alimony, or property division in light of the Asset and Debt Statement filed by Petitioner.

Rule 28(b)(4), " '[p]oints not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented.' " *Berry v. Berry*, 2011 WL 3250422, at *1 (quoting HRAP Rule 28(b)(4)). The ICA stated that it "notice[d] no plain error." *Id.*

The ICA nevertheless proceeded to consider the merits of Petitioner's arguments, characterizing the arguments raised in Petitioner's opening brief as follows: the Divorce Decree (1) is void under HFCR Rule 60(b)(4); (2) violated due process because the Complaint and Respondent's Proposed Decree failed to give him adequate notice that he would lose his copyrights, be responsible for all debts, and have no assets;[19] and (3) is void because service of the Divorce Decree and Pretrial Order No. 2 was inadequate. Although the ICA's characterization of Petitioner's arguments differs from the specific arguments raised in his opening brief, the ICA appears to have addressed the majority of the arguments raised by Petitioner.

As to the first argument, the ICA noted that HFCR Rule 60(b)[20] permits the court to " 'relieve a party … from any or all of the provisions of a final judgment, order, or proceeding" if "the judgment is void[.]" *Id.* n. 3. According to the ICA, a judgment is void only " 'if the court that rendered it lacked jurisdiction over the subject matter or the parties " 'or otherwise acted in a manner inconsistent with due process of law.' " *Id.* (quoting *Citicorp Mortg., Inc. v. Bartolome*, 94 Hawai'i 422, 428, 16 P.3d 827, 833 (App. 2000)) (quoting *In re Hana Ranch Co.*, 3 Haw.App. 141, 146, 642 P.2d 938, 941 (1982)). The ICA determined that nothing in the record suggested that the court lacked jurisdiction.[21] *Id.*

With respect to due process, the ICA determined that although the award of Petitioner's copyrights to Respondent "was greater than what was originally proposed," (1) " 'the family court has broad discretion to divide and distribute the estate of the parties in a just and equitable manner[,]" *id.* at *4 (quoting *Baker v. Bielski*, 124 Hawai'i 455, 463, 248 P.3d 221, 229 (App.2011)), including the power to divide Petitioner's intellectual property for purposes of equitable division, *id.* (citing *Teller v. Teller*, 99 Hawai'i 101, 108, 53 P.3d 240, 247 (2002)), and (2) Petitioner "was notified via multiple documents served on him that his copyrights, debts, and assets would be considered in the divorce proceedings" and thus, "received adequate notice regarding the impact of the proposed divorce on his copyrights, assets, and debts[.]" *Id.* Particularly, the ICA noted that the record indicates that Petitioner was personally served with the Complaint and served with Respondent's Proposed Decree by mail and facsimile.

As to the second argument, the ICA concluded the court "did not abuse its discretion when it denied [Petitioner]'s Motion to Set Aside." *Id.* The ICA noted that "[i]n his Motion to Set Aside, [Petitioner] presented arguments regarding custody, alimony, copyright, etc., the very issues that were part of the proceedings in which he failed to participate." *Id.* at *4.

Finally, as to Petitioner's third argument, the ICA determined that "[o]n November 24, 2008, a copy of the Divorce Decree was mailed to [Petitioner] at the Military address via certified mail" and "[a] United States Postal Service Track and Confirm document verified that the document was delivered to the Military address on December 1, 2008." *Id.* at *3.

### III.

Petitioner lists the following questions in his Application:

19. Notwithstanding the ICA's characterization of Petitioner's argument, Petitioner argued only that the Divorce Decree exceeded the relief sought in the Complaint and Proposed Decree with respect to the copyrights.

20. It should be noted that Petitioner did not expressly argue that the Divorce Decree was void under HFCR Rule 60(b)(4) to the court or to the ICA. Instead, as set forth *supra*, Petitioner contended that the Divorce Decree was void because the relief went beyond what was asked for in the Complaint.

21. The ICA did not indicate whether it was referring to jurisdiction over the subject matter or over the parties but the ICA must have been referring to both inasmuch as it resolved the appeal in Respondent's favor.

1. Whether the ICA gravely erred in its conclusion that the Points of Error were not property [sic] preserved or alternatively *whether it erred when it concluded that no Plain Error existed to reverse the [court]'s entry a[sic] default decree of divorce that exceeded any relief previously requested by the plaintiff* that was, in fact, materially contrary to the requested relief contrary to established precedent.

2. Whether the ICA gravely erred in its conclusion that the Points of Error were not property [sic] preserved or alternatively that the Plain Error existed to reverse the [court] because a *state court lacks the power to cause the involuntary transfer of a copyright when federal law preempting state law specifically prohibits any court from such an act.*

3. Whether the ICA gravely erred in its conclusion that the Points of Error were not property [sic] preserved or alternatively that the *Plain Error existed in concluding that the [court] had discretion to enter default as a sanction for a pro se defendant not traveling from Florida to Hawai'i to attend a settlement conference* when the record showed he had *not received actual notice of the continued conference let alone the threat to default him* if he failed to come to Hawai'i and *refused to set it aside because the pro se defendant didn't cite a court rule.*

(Emphases added.)

Respondent filed an Opposition to Petitioner's Application on November 25, 2011 (Opposition). As to Petitioner's first question, Respondent responds that (1) "the pleadings served on [Petitioner] put him on notice that the [court] would make an equitable award of [his] intellectual property rights that had accrued during the marriage[,]" (2) the Proposed Decree provided that the ownership of intellectual property would go to Respondent if Petitioner "did not pay [Petitioner] her interest in such intellectual property within a specified time period[,]" and (3) ownership of such intellectual property was awarded to Respondent since Petitioner failed to participate in the court proceedings.[22]

IV.

■ Initially, Petitioner argues that the ICA erred in concluding that his brief did not comport with HRAP Rule 28. Petitioner asserts that in his opening brief, he cited to the court minutes, which indicated that he was challenging the court's denial of his Motion to Set Aside. The portion of the minutes cited to by Petitioner read: "In reviewing [Petitioner's] motion, there is no reference to any rules.... On the face of the motion[,] [Petitioner] has not cited any [rule of the HFCR] that would obligate this court to set aside the Divorce Decree."[23] [RA at 11] Contrary to Petitioner's assertion, citation to the court's minutes is not a citation to a finding or conclusion, which HRAP Rule 28(b)(4)(C) requires. *Id.* (mandating that a point of error include "either a quotation of the finding or conclusion urged as error or reference to appended findings and conclusions" where the point of error "involves a finding or conclusion of the court or agency") Petitioner's citation to the court's minutes was not included in his "points of error" but in his "statement of the case."

The ICA was correct that Petitioner's brief did not comply with the requirements of

---

22. In the Petitioner's Response to Respondent's Opposition (Response) filed by Petitioner on November 30, 2011, Petitioner contends that although the court's .denial of his Motion to Set Aside is reviewed for an abuse of discretion, a court has no discretion to uphold a void judgment. (Citing *Bartolome*, 94 Hawai'i at 428, 16 P.3d at 833.) Petitioner reiterates his belief that the Divorce Decree was void as violative of his due process rights since it exceeded the relief sought in the Complaint with respect to copyrights.

23. Respondent asserts in her Opposition that (1) this court reviews the court's denial of Petitioner's Motion to Set Aside for an abuse of discretion, (2) Petitioner delayed the instant proceedings for nearly a year with "clear knowledge of the [ ] court proceedings[,]" and (3) thus, there was sufficient reason for the court to deny the Motion to Set Aside.

HRAP Rule 28.[24] However, this court may nonetheless consider Petitioner's arguments on the merits. *See* HRAP Rule 28 ("[T]he appellate court, at its option, may notice a plain error not presented.")

## V.

### A.

■ With respect to the questions raised in Petitioner's Application, we first address Petitioner's third question. Petitioner asks whether it was an abuse of discretion for the court to enter default against him "as a sanction" for failing "to travel from Florida to Hawai'i to attend a settlement conference when the record showed he had not received actual notice of the continued conference let alone the threat to default him if he failed to come to Hawai'i" and in denying his Motion to Set Aside on the ground that Petitioner failed to "cite a court rule." The sole argument presented in connection with the foregoing question is as follows:

> The Opening Brief pointed to the error in the findings citing to both the record and the text of the minute order that made it clear that the error was based on the [court's] erroneous finding that the Petitioner–Defendant should be denied relief because as a pro se litigant he failed to cite to a family court rule.

While the foregoing argument is indiscernible and could be disregarded, *State v. Bui,* 104 Hawai'i 462, 464 n. 2, 92 P.3d 471, 473 n. 2 (2004) (stating that "[i]nasmuch as Defendant "presents no discernable argument in support of this contention[,] ... it is [this court's] prerogative to disregard this claim"), Petitioner's argument is somewhat apparent from the question itself. The first part of the third question asks whether the court abused its discretion when it defaulted Petitioner for not attending a settlement conference when Petitioner had not received actual notice of the settlement conference or the threat to default.

In *Rearden Family Trust v. Wisenbaker,* 101 Hawai'i 237, 250–51, 65 P.3d 1029, 1042–43 (2003), the trial court entered default against the defendant, a non-resident, after he failed to personally appear at a settlement conference, although his attorney appeared on his behalf. This court viewed "the sanction of a default judgment [as a harsh one,]" and concluded that the court's denial of the defendant's motion to set aside as error. *Id.* at 254, 65 P.3d at 1046. However, unlike the instant case, in *Rearden,* the defendant had made "settlement proposals and did engage in [settlement conferences] at the behest of the court." *Id.* This court also noted that the plaintiffs settlement conference statement was untimely and plaintiffs had also failed to attend two settlement conferences. *Id.* at 255, 65 P.3d at 1047.

In contrast, Petitioner did not appear at the scheduled hearings, the first scheduled settlement conference, or the rescheduled settlement conference on September 18, 2008. Petitioner did not engage in settlement discussions or file his own settlement conference statement. Aside from the Motion to Dismiss and Motion to Strike that were dismissed after Petitioner failed to appear at the hearings on those motions, Petitioner did not defend against Respondent's filings. Petitioner's Motion to Dismiss did not specifically challenge alimony, child support, and equitable division of the parties'

---

24. It appears that Petitioner's opening brief does cite to the record in support of the majority of facts and references to the court, but did not do so for every single fact or reference to the court. Also, Petitioner concedes that he failed to append relevant documents. The ICA was correct that Petitioner's points of error did not expressly allege the error committed by the court and contained no reference to where in the record the alleged error occurred or where in the record the alleged error was objected to or brought to the attention of the court. Finally, while several of his challenges arguably implicate findings and conclusions of the court, Petitioner did not cite to specific findings or conclusions in raising his challenges. Petitioner contends that his citation to the court minutes indicated that he was challenging the court's refusal to set aside the Divorce Decree.

However, HRAP Rule 28(b)(4)(C) requires "a quotation of the finding or conclusion urged as error or reference to appended findings and conclusions" in support of each point of error involving a finding or conclusion. Petitioner's points of error do not cite to a single finding or conclusion. The reference to the court's minutes was in his "statement of facts," not his "points of error."

property. Under these circumstances, and where Petitioner had notice that the court would default him in the event he failed to appear at the rescheduled settlement conference on September 18, 2008, the court did not abuse its discretion in finding Petitioner in default. *See Bettencourt v. Bettencourt*, 80 Hawai'i 225, 232, 909 P.2d 553, 560 (1995) (concluding that "it was not an abuse of discretion ... to find appellant in default" where the record indicated that the appellant's counsel had been notified of the rescheduled hearing, although the appellant maintained he had not received notice).[25]

Furthermore, this is not a case in which Petitioner did not have notice that he would be defaulted in the event he failed to appear at the settlement conference. *See Long*, 101 Hawai'i at 408, 69 P.3d at 536 (concluding that the trial court abused its discretion by summarily entering default against the defendant because "there was no notice to [the defendant] or his attorney prior to the conference that default was being considered"). Petitioner may be charged with having notice of the settlement conference and the threat of default. Pretrial Order No. 2 indicated that "Settlement Conference is scheduled for 9/18/08 at 2:30." It also stated that, "[i]f [Petitioner] fail[ed] to appear at [the] settlement conference, he shall be defaulted." HFCR Rule 5 provides that as to "orders required by its terms to be served," *"service upon a party [*[26]*] shall be made* by delivering a copy to the ... party or *by mailing it to the ... party at the ... party's last known address* or, if no address is known, by leaving it with the clerk of the court." (Emphases added.) The rule additionally provides that "[s]ervice is complete upon mailing."

It is apparent from the record, as set forth above, that Petitioner's last known address was his Military address. A Statement of Mailing filed by Brawley indicates that a copy of Pretrial Order No. 2 was mailed to Petitioner at his Military Address on June 25, 2008. *See* finding 23. Petitioner continued to file documents bearing the Military address even after Pretrial Order No. 2 was sent to him at that address. On August 6, 2008, Petitioner filed a "First Request for Answers to Interrogatories" dated June 28, 2008, and listed his address as the Military address. In addition, Petitioner attached to his Motion to Set Aside an unfiled letter that he sent to Brawley on September 5, 2008 regarding the various documents he had received in the case, and that letter once again referred to the Military address as his address. Thus, Petitioner may be deemed to have been served with Pretrial Order No. 2 and provided notice that he would be defaulted in the event he failed to appear at the settlement conference. *See* finding 23.[27]

#### B.

■ The second part of Petitioner's third question asks whether the court abused its discretion when it refused to set aside the Divorce Decree on the ground that Petitioner failed to cite a court rule. "A court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." *Id.* at 253, 65 P.3d at 1045 (ellipsis, internal quotation marks, and citation omitted).

At the hearing, the court did note that it did "not see any reference in [the] October 9, 2009 [Motion to Set Aside] to any specific rule." In finding "good cause to deny the motion to set aside the decree[,]" the court stated, "On the face of the motion I do not believe [Petitioner] has cited sufficiently to any Family Court rule or statutory cite that would obligate this court to set aside the divorce decree." Conclusion 4 also states "[Petitioner] failed to cite to any legal au-

---

**25.** Although Petitioner argues that the court should not have entered default under the facts of this case, none of the parties question the court's authority after prior notice, to enter default for a party's failure to attend a scheduled settlement conference. *Cf.* HFCR Rule 94(c) (vesting the court with the authority to sanction a pro se party for his or her failure to appear at any conference set by the court pursuant to HFCR Rule 37(b), which includes the authority to render a judgment by default as a sanction).

**26.** As indicated *supra,* service was being made on Petitioner because he was proceeding pro se.

**27.** Petitioner did not expressly challenge this finding on appeal.

thority which would have provided a basis for relief."

However, the court did not deny his Motion to Set Aside solely on the ground that he failed to cite a court rule. The court noted that "substantively," Petitioner was "arguing for [HFCR Rule] 60B relief." However, the court said, "The court nonetheless is denying the relief sought[,]" indicating its ruling on the merits of Petitioner's HFCR Rule 60(b) claims.

### C.

■ Although not expressly raised in his Application, it appears the court properly denied Petitioner's Motion to Set Aside with respect to alimony, child support, and equitable division. The court filed the Divorce Decree on November 21, 2008. Petitioner did not file his Motion to Set Aside until October 9, 2009, which Petitioner maintained at the hearing was grounded in HFCR Rule 60(b), although he had not cited the rule in his motion.[28] HFCR Rule 60(b) permits the court to relieve a party from any or all of the provisions of a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has

been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

While Petitioner maintained at the February 10, 2010 hearing on his Motion to Set Aside that he had "meritorious defenses[,]" Petitioner did not indicate what those defenses were, except that with respect to child support, he argued that the children were not his biological children.[29] Petitioner did not indicate at the hearing why he had failed to raise these defenses previously, or identify which provision of HFCR Rule 60(b) would entitle him to relief.

Additionally, Petitioner did not present any argument pertaining to these issues in his Application. Thus, Petitioner may be said to have waived his arguments on these issues with respect to the court's denial of his Motion to Set Aside in the instant writ. *See E & J Lounge Operating Co., Inc. v. Liquor Comm'n of City and County of Honolulu,* 118 Hawai'i 320, 347, 189 P.3d 432, 459 (2008) ("[I]nasmuch as the parties did not raise these issues in their appeal to the ICA and Petitioner did not raise these issues in its Application, the issues are deemed waived and need not be considered .") In any event, as the ICA noted, the court defaulted Petitioner on these issues after his repeated failure to appear in this case and these issues were "the very issues that were part of the

**28.** It is noted that Petitioner maintained at the hearing on his Motion to Set Aside that he did not obtain a copy of the Divorce Decree. However, the record indicates that a copy of the Divorce Decree was sent to Petitioner at his last known address on November 24, 2008. Petitioner noted at the hearing that the proof of mailing was not filed with the court until a year after the Divorce Decree was filed. Respondent contended in response that she was "not required to send a copy of th[e] decree certified mail to [Petitioner]," but did so in light of Petitioner's "history[,]" of apparently failing to participate in the proceedings. Although the proof of mailing was not filed at the time of service, it does indicate that Petitioner was served at his last known address only days after the Divorce Decree was filed. In addition, as indicated in the findings, *see* finding 27, a "Track & Confirm" receipt indicates that the Divorce Decree was

delivered to Petitioner on December 1, 2008. Petitioner did not specifically challenge this finding on appeal. Moreover, Petitioner apparently obtained the Divorce Decree as evidenced by this response thereto by way of his Motion to Set Aside.

**29.** It is noted that notwithstanding Petitioner's argument regarding child support, HRS § 584–4(a)(1) states that "[a] man is presumed to be the natural father of a child" if "[h]e and the child's natural mother are or have been married to each other and the child is born during the marriage[.]" Petitioner does not challenge Respondent's statement in her complaint that she was pregnant with the minor children (twins) at the time of the parties marriage, or that the children were born during the parties' marriage.

proceedings in which [Petitioner] failed to participate." *Berry*, 2011 WL 3250422, at *3. Based on the specific arguments raised in Petitioner's Application, the court cannot be said to have abused its discretion in not setting aside the Divorce Decree inasmuch as the court found that Petitioner had prior notice of the settlement conference [30] and the possibility of default, and appears to have considered Petitioner's arguments in the context of HFCR Rule 60(b). However, as discussed *infra*, the court did abuse its discretion in refusing to set aside that portion of the Divorce Decree transferring Petitioner's entire ownership interest in the copyrights to Respondent.

## VI.

In connection with Petitioner's first question Petitioner maintains the Divorce Decree violated his due process rights insofar as he had no notice that the copyrights themselves would be awarded to Respondent in the final Divorce Decree as opposed to only an equitable split of proceeds derived from the copyrights, as reflected in the Proposed Decree. *Shinn*, 120 Hawai'i at 10, 200 P.3d at 379 (stating that "the purpose of HRCP Rule 54(c) is to provide a defending party with adequate notice upon which to make an informed judgment on whether to default or actively defend the action") (brackets, internal quotation marks, and citation omitted); *Genesys Data Technologies*, 95 Hawai'i at 40, 18 P.3d at 902 (stating that "a default judgment is not void for violating HRCP Rule

54(c) unless the violation deprived the defaulting party of due process by failing to provide notice of the scope of the claim and a meaningful opportunity to defend against it"); *Long*, 101 Hawai'i at 400, 69 P.3d at 528 (stating that Rule 54(c) requires that " '[a] judgment by default shall not be different in kind from or exceed in amount from that which was prayed for in the demand for judgment' ") (brackets in original). He argues that the ICA gravely erred in failing to notice as plain error that the relief awarded Respondent in Divorce Decree as to the copyrights "went far beyond the prayer in the complaint." Because we conclude in the subsequent section that the court abused its discretion in refusing to set aside the award of all of Petitioner's ownership interest in the copyrights to Respondent in violation of federal law, we do not discuss this question.

## VII.

In connection with his second question, Petitioner argues that the Divorce Decree violates federal law.[31] In his Motion to Set Aside, Petitioner argued that 17 U.S.C. § 201(e) prohibited the involuntary transfer under the Divorce Decree of his entire ownership interest in his copyrights.[32] The court did not specifically address Petitioner's argument in this regard. On appeal to the ICA, Petitioner again argued that the court abused its discretion in failing to set aside the Divorce Decree because 17 U.S.C. §§ 201(e) and 301(a)[33] prohibited the trans-

---

**30.** *See* finding 23 indicating that Petitioner received Pretrial Order No. 2 on June 25, 2008.

**31.** Article VI, section 2 of the United States Constitution states as follows:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. The Supreme Court has explained that state law is pre-empted where, *inter alia*, "that law actually conflicts with federal law[.]" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The Divorce Decree purported to transfer all of Petitioner's ownership interest in the copyrights, apparently in-

cluding those "exclusive rights within the general scope of copyright as specified by [17 U.S.C. § 106]" that "are governed exclusively by [the Copyright Act,]" 17 U.S.C. § 301. Under the circumstances presented here, where federal law directly preempts the application of state law, we conclude that there are extraordinary circumstances justifying relief under HFCR Rule 60(b)(6). Thus, we address Petitioner's preemption claim in this case.

**32.** *See* page 9 n. 13 for text of 17 U.S.C. § 201(e).

**33.** 17 U.S.C. § 301(a) states as follows:

(a) On and after January 1, 1978, *all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106* in works of authorship that are fixed in a tangible medium of expression and come within the subject mat-

fer of his ownership interest in his copyrights. Respondent did not respond to this argument in her Answering Brief. The ICA, relying on *Teller*, 99 Hawai'i at 108, 53 P.3d at 247, concluded that the court had the power to equitably divide the copyrights, but did not address whether such transfer was permissible under federal copyright law.

In his Application, Petitioner argued that the ICA erred in relying on *Teller* inasmuch as the transfer of copyrights is preempted by federal law. In her Opposition, Respondent did not make any arguments regarding federal copyright law and instead, urged that the transfer of the copyrights to her was permitted by *Teller*, 99 Hawai'i at 108, 53 P.3d at 247. On January 24, 2012, this court ordered supplemental briefing on the applicability of federal copyright law.

In their supplemental briefs, the parties rely primarily on two cases: *Rodrigue v. Rodrigue*, 218 F.3d 432, 432 (5th Cir.2000) and *In re Marriage of Worth*, 195 Cal.App.3d 768, 241 Cal.Rptr. 135 (Cal.Ct.App.1987). Petitioner reads *Rodrigue* as holding that "the rights to money derived from a copyright [are] subject to equitable division but the exclusive rights of ownership remain the unassailable province of the author." According to Petitioner, *Worth* "held in line with *Rodrigue* ... that the wealth generated from an infringement action, not the copyright ownership and rights of ownership bound up in Section 106 [is] community property." [34]

Respondent, on the other hand, maintains that "copyrights acquired during marriage are community property subject to California's marital property laws." In addition, Respondent asserts *Worth* held the Copyright Act does not preempt state marital property law because a copyright vests initially in the authoring spouse, but does not preclude acquisition of a community property interest by a spouse. Moreover, Respondent points to *Worth*'s conclusion that 17 U.S.C. § 301 " 'reveals an intent by Congress to supercede only state *copyright* laws.' " (Quoting *Worth*, 195 Cal.App.3d at 777–778, 241 Cal.Rptr. 135.) (Emphasis in original.) According to Respondent, consistent with *Worth*, *Rodrigue* held state marital laws apply to the copyrights.

**B.**

*Teller*, relied upon the ICA, does not address the issue presented in this case. In *Teller*, this court did "hold that intellectual property is capable of division for purposes of equitable distribution." 99 Hawai'i at 108, 53 P.3d at 247. But *Teller* involved patents and not copyrights. This court stated that "[b]ecause the United States Supreme Court has determined that Federal case law does not preempt the states' right to impose regulation on patents, we do not address federal preemption." 99 Hawai'i at 111, 53 P.3d at 250 (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974)). *Teller* observed that the Supreme Court had declared that " '[t]he only limitation on the States is that in regulating the area of patents and copyrights they do not conflict with the operation of the laws in this

---

ter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, *are governed exclusively by this title.* Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.
(Emphases added.)

**34.** 17 U.S.C. § 106 states as follows:
Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
    (1) to reproduce the copyrighted work in copies or phonorecords;
    (2) to prepare derivative works based upon the copyrighted work;

    (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
    (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
    (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
    (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

area passed by Congress.'" *Id.* (quoting *Kewanee Oil,* 416 U.S. at 479, 94 S.Ct. 1879). *Teller* cited *Rodrigue* as recognizing that federal copyright law does not preempt state law in its entirety. *See id.* (citing *Rodrigue,* 218 F.3d at 439). But, *Teller* did not address the extent to which federal copyright law preempts state law regarding equitable division.

### C.

In *Worth,* the California Court of Appeal considered the "issue [of] whether the marital community has an interest in a copyright." *Id.* at 771, 241 Cal.Rptr. 135. The California Court of Appeal rejected the husband's argument that because a copyright "vests initially" in the author or authors of the work under 17 U.S.C. § 201(a),[35] the copyright belonged solely to him as the author of the work. *Worth* began its analysis with the general proposition that "all property acquired during marriage is community property." *Id.* at 773, 241 Cal.Rptr. 135. According to *Worth,* then, there is "little doubt that any artistic work created during the marriage constitutes community property." *Id.* Because the books at issue were written and published during the parties' marriage, *Worth* held the "literary works constituted community property." *Id.*

It was noted by *Worth,* that the husband agreed that the wife was entitled to one-half interest in the royalties derived from the copyrighted works. *Id.* at 774, 241 Cal.Rptr. 135. *Worth* construed such concession as reflecting the husband's acknowledgment that the books were considered community property. *Id.* Hence, *Worth* concluded that if the artistic work is community property, "it must follow that the copyright itself obtains the same status." *Id.*

Addressing the various provisions of the Copyright Act, *Worth* noted that 17 U.S.C. § 201 "provides for the transfer of a copyright by contract, will 'or by operation of law.'" [36] *Id.* According to *Worth,* however, although a copyright " 'vests initially' in the authoring spouse[,]' " 17 U.S.C. § 201, "the copyright is automatically transferred to both spouses by operation of the California law of community property." *Id.*

Next, *Worth* considered whether California's community property laws were preempted by the Copyright Act. *Id.* at 776, 241 Cal.Rptr. 135. In *Worth,* the husband relied on *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), in support of his preemption argument. In *Hisquierdo,* the Supreme Court considered whether retirement benefits under the Railroad Retirement Act that had not yet vested could be awarded to the wife upon dissolution of the marriage. *Id.* at 573, 99 S.Ct. 802. The Supreme Court held that California community property law was preempted by the Railroad Retirement Act which vested ownership in the retired worker alone. *Id.* at 590, 99 S.Ct. 802; *see also McCarty v. McCarty,* 453 U.S. 210, 224, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (determining that military retirement pay not subject to state community property laws); *Free v. Bland,* 369 U.S. 663, 668–669, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) (determining that U.S. Savings Bonds standing in the name of husband "or" wife not subject to state community property laws); *Wissner v. Wissner,* 338 U.S. 655, 658, 70 S.Ct. 398, 94 L.Ed. 424 (1950) (determining that a National Service Life Insurance policy was not subject to state community property laws, and that proceeds belong to the named beneficiary).[37]

*Worth* distinguished the foregoing cases from the case before it, reasoning that in those cases, the benefit at issue "was expressly defined by Congress to be the separate property of the designated recipient." 195 Cal.App.3d at 777, 241 Cal.Rptr. 135. In contrast to those cases, *Worth* asserted, "the

**35.** 17 U.S.C. § 201(a) states that "[c]opyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work."

**36.** 17 U.S.C. § 201(d)(1) states that "[t]he ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession."

**37.** These cases were cited in *Hisquierdo.* *See* 439 U.S. 572, 99 S.Ct. 802.

Copyright Act expressly provides for co-own-ership as well as transfer of all or part of a copyright." *Id.* In addition, *Worth* declared that although under 17 U.S.C. § 201(a), a copyright " 'vests *initially* in the author[,]' " "nothing in the Copyright Act precludes the acquisition of a community property interest by a spouse[.]" *Id.* (emphasis in original).

The husband's argument that California's community property laws were preempted by 17 U.S.C. § 301, was also rejected by *Worth.* *Worth* explained that state law is preempted "only if the rights granted under state law are 'equivalent to any of the exclusive rights within the general scope of copyright as specified by [17 U.S.C. § ] 106[,]' " and be-cause the rights of ownership and division of marital property are in no way equivalent to the rights within the scope of the Copyright Act, California community property law is not preempted. *Id.* at 777–78, 241 Cal.Rptr. 135.

In accordance with the foregoing, *Worth* concluded that the husband's copyrights in the books "constituted divisible community assets." *Id.* at 778, 241 Cal.Rptr. 135. Con-sequently, "husband and wife remain[ed] as co-owners of an undivided interest in the copyrights[,]" and "both parties [were] enti-tled to share equally in any of the proceeds directly or indirectly related to the pending federal lawsuit for copyright infringement." *Id.*

In *Rodrigue,* decided thirteen years after *Worth,* the Fifth Circuit Court of Appeals similarly addressed whether the copyrighted works of the husband were community prop-erty. The couple in that case, George and Veronica, were married and divorced in Loui-siana. 218 F.3d at 433. During the mar-riage, George obtained certificates of copy-right for several of his paintings. *Id.* Under Louisiana law, the parties' marriage effected a "legal regime" of matrimonial property, establishing between them a community of acquets [38] and gains, referred to as the "com-munity" and upon divorce, each spouse owned an undivided one-half interest in the community property and its fruits and prod-ucts until partition. *Id.* at 433–34.

Upon dissolution of George and Veronica's marriage, George's former business associate filed an action in federal court seeking a declaration that George was the sole owner of intellectual property rights in the paint-ings. *Id.* at 434. George contended that the Copyright Act preempted state community property law, preventing his copyrighted works from becoming community property, thereby exempting his copyrights from divi-sion and partition in divorce. *Id.* at 435.

Preliminarily, the *Rodrigue* court noted that 17 U.S.C. § 201(a) specifies that "[c]opy-right in a work protected under this title vests initially in the author or authors of the work." *Id.* The Fifth Circuit stated that in contrast, Louisiana community property law declares that all " 'property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse' is community property." *Id.* George main-tained that state law was preempted.

*Rodrigue* stated, "We do not disagree with George's general premise; we do disagree, though, with his expansive view of the scope of the conflict between copyright law and community property law, and thus with the extent of the preemptive effect of such con-flict." *Id.* at 435. *Rodrigue* held "that an author-spouse in whom a copyright vests maintains exclusive managerial control of the copyright but that the economic benefits of the copyrighted work belong to the communi-ty while it exists and to the former spouses in indivision [ [39] ] thereafter[,]" noting that such position "is consistent with both federal copyright law and Louisiana community property law and is reconcilable under both." *Id.*

The Fifth Circuit began by analyzing the scope of 17 U.S.C. § 201(a), which, to reiter-ate, provides that a *"[c]opyright* in a work

---

**38.** "Acquet" is defined as "[p]roperty acquired by purchase, gift, or any means other than inher-itance. The term is most commonly used to denote a marital acquisition that is presumed to be community property." *Black's Law Dictio-nary* 26 (9th ed. 2009).

**39.** "Indivision" is defined as "undivided owner-ship in property." *Black's Law Dictionary* 1594 (8th ed. 2004)

protected under this title vests initially in the author or authors of the work." *See id.* (emphasis added). *Rodrigue* construed § 201(a) as pertaining only to a "copyright," the owner of which has "the exclusive rights of reproduction, adaptation, publication, performance, and display." *Id.* (citing 17 U.S.C. § 106). According to *Rodrigue*, "none of these rights either expressly or implicitly include the exclusive right to enjoy income or any of the other economic benefits produced by or derived from copyrights." *Id. Rodrigue* further observed that the copyright "vests" in the author under § 201(a), but "never uses the words 'own' or 'ownership,' and the Act does not speak of ownership per se or globally, but only in the sense of the five exclusive attributes listed in [17 U.S.C.] § 106." *Id.* at 435–36.

*Rodrigue* determined that the Copyright Act's "inclusion of only five express attributes of ownership while omitting, *inter alia,* the attribute of enjoyment of economic benefits, and Congress's reference to immediate vesting of the copyright, and not to vesting of ownership," suggested that the " 'vesting' of the copyright and its five (and five only) statutorily delineated attributes in one spouse does not preclude classification of other attributes of ownership of a copyright as community property." *Id.* at 436. Further, *Rodrigue* noted that although the copyright vests "initially" in the author, the statute does not speak of a "permanent-vesting[.]" *Id.* (emphasis omitted). Thus, according to *Rodrigue,* the Copyright Act "explicitly allows for subsequent vesting in non-authors, either jointly with the author or subsequent to him by virtue of transfer of all or lesser portions of the copyright." *Id.* The Fifth Circuit ultimately concluded that 17 U.S.C. § 201(a), which provides that five specific rights "vests initially" in the author, did not

"ineluctably conflict" with any provision of Louisiana matrimonial law that would recognize that Veronica does have an economic interest in the George's copyrights. *Id. Rodrigue* likened that economic benefits flowing from copyrights to "paychecks [and] partnership interests[.]" *Id.* at 439.[40]

Directly addressing preemption, the *Rodrigue* court held that the Copyright Act does not mandate "monolithic preemption of Louisiana property law *in toto* " inasmuch as 17 U.S.C. § 301(a) "states that 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... are governed exclusively by this title.' " *Id.* at 439 (ellipsis in original). According to *Rodrigue,* 17 U.S.C. § 301(b) expresses that "nothing in § 301(a) 'annuls or limits any rights or remedies under the common law or statutes of any State with respect to ... activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.' " *Id.* (ellipsis in original). In sum, *Rodrigue* held that the "only ownership rights ... grant[ed] exclusively to the author [under 17 U.S.C. § 106] are the rights to (1) reproduce, (2) prepare derivative works, (3) distribute copies, (4) perform, and (5) display the work[,]" "[a]mong the entire 'bundle' of rights comprising full ownership of property generally, the preemptive effect of federal copyright law extends only to this explicitly-enumerated, lesser-included quintet." *Id.* Because nothing in the Copyright Act governs "the right to enjoy the earnings and profits of the copyright[,]" *Rodrigue* concluded that the Copyright Act does not "prevent non-preempted rights from being enjoyed by the community[.]" *Id.*

---

**40.** *Rodrigue* acknowledged that Louisiana law governing marital property provides for " 'equal management' of property belonging to the community" such that, generally, "[e]ach spouse, acting alone, has the right to manage, control, or dispose of community property." *Id.* at 438. *Rodrigue* stated that "[i]f this general principle were to be applied across the board to copyrights created by one spouse in community, however, an irreconcilable conflict with the author-spouse's five exclusive § 106 rights of reproduction, adaptation, publication, performance, and display would result." *Id. Rodrigue* determined that copyrights came within the exception to the general rule provided for in the Louisiana code under which the spouse in whose name " 'moveables [have been] issued or registered' " "has exclusive management rights (the combination of *usus* and *abusus* ) but preserves for the spouses jointly the right to enjoy the benefits (the *fructus* ) of such property." 218 F.3d at 438–39.

## VIII.

*Worth*'s analysis is somewhat problematic. *Worth* acknowledged that under 17 U.S.C. § 201 a copyright " 'vests initially' in the author[.]' " 195 Cal.App.3d at 777, 241 Cal. Rptr. 135 (emphasis omitted). But, according to *Worth*, "the copyright is automatically transferred to both spouses by operation of the California law of community property." *Id.* at 774, 241 Cal.Rptr. 135. *Worth*'s analysis in terms of "initial vesting" and immediate divestment would seem contradictory. The term "vests" connotes something more than momentary ownership. *See Black's Law Dictionary* at 1594 (defining "vest" as "confer[ring] ownership of (property) upon a person[;]" "invest[ing] (a person) with the *full* title to property[;]" "giv[ing] (a person) an immediate, *fixed right* of present or future enjoyment." (Emphasis added.))

Moreover, *Worth* did not address 17 U.S.C. § 201(e), which to reiterate, invalidates any "action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright," "except as provided under title 11" (regarding bankruptcy proceedings), "[w]hen an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, *has not previously been transferred voluntarily by that individual author* [.]" (Emphasis added.) As pointed out in 1 *Nimmer on Copyrights* § 6A.03[C][2][b], "[a]t first blush, [17 U.S.C. § 201(e) ] would seem to bar any transfers by operation of law, thus rendering [17 U.S.C. § 201(d), allowing for such transfers] meaningless." However, *Nimmer on Copyrights* states that "the two subsections can be reconciled" by reading 17 U.S.C. § 201(e) as precluding transfers by operation of law only if the author's ownership of a copyright has not previously been voluntarily transferred. Because § 201(d) governing transfers of copyrights by operation of law "underpins *Worth*'s analysis," 1 *Nimmer on Copyrights* § 6A.03[C][2][b], and § 201(e) would preclude such transfers unless ownership of the copyright has previously been voluntarily transferred, *Worth*'s holding can only be rec-

onciled with the Copyright Act by concluding that the authoring spouse implicitly consented to transfer of his or her copyright to his or her spouse, *see id.* at § 6A.03[C][3] (noting that "[a]bsent such consent, *Worth*'s holding cannot comply with the Copyright Act, and hence would clearly be pre-empted").

Even if this court were to adopt *Worth*'s rationale, *Worth* did not set forth with precision, the scope of each spouse's ownership interest upon divorce. *See id.* (noting that "*Worth* raised none of the vexing issues of how transfers of copyrighted works should be treated in the context of a marital community"). For example, *Worth* did not address whether the non-authoring spouse, by virtue of his or her ownership interest in the copyright, has the rights set forth in 17 U.S.C. § 106 (reproduction, adaptation, publication, performance, and display). But, dividing those rights equally between spouses upon divorce would impinge on the author's ability to exploit his or her copyright and undermine the purpose of the Copyright Act of encouraging authorship. *Id.* at § 6A.04; *see also Rodrigue*, 218 F.3d at 442 (noting "the federal interest in encouraging authorship and exploitation of copyright").

Nimmer states that, for example, treating spouses as "traditional co-owners ... transmuting every transfer and exclusive license granted by a married [author] into a mere partial grant, subject to rival grants of title emanating from the erstwhile spouse" would be a "a prescription for the worst disorder." 1 *Nimmer on Copyrights* § 6A.04. Thus, to preserve *Worth*'s rationale, *Nimmer on Copyright* suggests "[c]onstitutionally, ... the courts must invoke a presumption, at least *sub silentio*, that the author-spouse consents to" "sharing author status." *Id.* To avoid problems raised by "traditional co-ownership," Nimmer advocates "adding to that presumption a complementary presumption" that the "nonauthor-spouse[ ] consent[s] to ceding full authority over disposition of the copyright to the author-spouse." *Id.*

It would seem apparent that preservation of *Worth*'s rationale requires legal gymnastics. In light of 17 U.S.C. § 301(e), which prohibits involuntary transfers of copyrights,

to hold that part "ownership of a copyright ... transfer[s]" to the nonauthoring-spouse by "operation of [Hawai'i marital property] law" under 17 U.S.C. § 201(d) requires this court to create a legal presumption that the authoring-spouse consented to sharing his or her ownership by virtue of marriage. 1 *Nimmer on Copyrights* § 6A.04. But, then, a second legal presumption that the nonauthoring-spouse consents to the authoring-spouse maintaining exclusive control over all of the exclusive rights delineated in 17 U.S.C. § 106 would also need to be created to avoid the risk of circumventing the very purpose of the Copyright Act. We decline to adopt this approach.

On the other hand, *Rodrigue* offers a means of reconciling marital property law with the Copyright Act. *See id.* at § 6A.05 (noting that instead of "finding state laws here threatening to federal uniformity, [*Rodrigue* ] found a way to harmonize the two"). As *Rodrigue* observes, only "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ... are governed exclusively by the [Copyright Act]." 17 U.S.C. § 301(a). Thus, state law would be preempted only to the extent it provides for legal or equitable rights within the scope of the exclusive rights under 17 U.S.C. § 106 (rights to reproduce, adapt, distribute, perform, and display copyrighted works). *See Rodrigue*, 218 F.3d at 439 ("Among the entire 'bundle' of rights comprising full ownership of property generally, the preemptive effect of federal copyright law extends only to this explicitly-enumerated, lesser-included quintet.")

▪ Pursuant to HRS § 580-47, the court has the discretion to divide and distribute "the estate of the parties, real, personal, or mixed, whether community, joint, or separate[.]" This court has held that intellectual property is a martial asset that is subject to equitable division upon divorce. *See Teller*, 99 Hawai'i at 107–108, 53 P.3d at 246–47. With respect to the equitable division of ownership interests in a copyright, instead of creating the legal presumptions required to uphold *Worth*'s approach, we adopt the approach taken by *Rodrigue* that any distribu-

tion by the court must result in the authoring-spouse retaining the exclusive rights set forth under 17 U.S.C. § 106, but that the non-authoring spouse is entitled to an economic interest in the copyrights.

▪ Although 17 U.S.C. § 301(e) prohibits the involuntary transfer of an author's ownership of a copyright, the Copyright Act preempts state law only to the extent state law governs "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301; *see also Rodrigue*, 218 F.3d at 440 (noting that 17 U.S.C. § 301 specifies a "limited preemption which trumps only those common law or state law rights that are *equivalent* to federal copyright") (emphasis in original). Because such a holding would not touch upon those exclusive rights under § 106, state law would not be preempted. *Rodrigue*, 218 F.3d at 439 ("[W]e conclude that federal copyright law does not conflict with, and therefore does not preempt, Louisiana community property law to the extent of denying the entitlement of the non-author spouse (Veronica) to an undivided one-half interest in the economic benefits of the copyrighted works created by the author (George)[.]")

Moreover, the *Rodrigue* approach comports with the partnership model for dividing assets in divorce proceedings, under which " 'partners share equally in the profits of their partnership, even though they may have contributed unequally to capital or services.' " *Cox v. Cox*, 125 Hawai'i 19, 250 P.3d 775, 782 (2011) (quoting *Tougas v. Tougas*, 76 Hawai'i 19, 27, 868 P.2d 437, 445 (1994)). As pointed out by *Rodrigue*, allowing the nonauthoring-spouse to share in the proceeds derived from the authoring-spouse's copyright is similar to other examples where one spouse retains exclusive management over a particular assert, but spouses share in the benefits derived therefrom. *Rodrigue* explained:

A paycheck issued by the employer in the name of the employee-spouse alone can be cashed, deposited, or otherwise negotiated only by that spouse; yet, the proceeds of the paycheck, representing earnings of one spouse in community, belong to the com-

munity. Likewise, a motor vehicle purchased with community funds but titled in the name of one spouse alone can be sold, leased, or encumbered only by the named spouse; yet the proceeds of any such disposition belong to the community. And when, during the existence of the community, one spouse joins an existing partnership or joins in the formation of a new one, the partner-spouse has the exclusive right to participate in the partnership and to manage, alienate, or encumber that interest; yet the economic benefits-and liabilities-flowing from the partnership belong to the community.

218 F.3d at 438 (footnotes omitted). Some courts, including in *In re Matter of Marriage of Monslow,* 259 Kan. 412, 912 P.2d 735 (1996), relied upon by this court in *Teller,* have endorsed the award of the entire ownership interest to the spouse with the right to control and manage the intellectual property, while subjecting "future income generated by the interest to a . . . lien in favor of [the other spouse]."

In sum, the court abused its discretion in refusing to set aside that portion of the Divorce Decree that transferred entirely Petitioner's copyrights to Respondent, in violation of federal law. The Divorce Decree purported to transfer all of Petitioner's interest in his copyrights, including those five attributes of ownership exclusively governed by the Copyright Act. Hence, to uphold the Divorce Decree would be to ignore a violation of federal law. The ICA thus gravely erred in failing to notice this error as plain error.

## IX.

In conclusion, the court abused its discretion in failing to set aside that portion of the Divorce Decree awarding Respondent the entire ownership interest in the copyrights. The ICA gravely erred in failing to notice the court's error for plain error. We thus vacate the August 17, 2011 judgment of the ICA filed pursuant to its July 28, 2011 SDO, affirming the September 22, 2010 Order De-

nying Motion to Set Aside and the Findings of Fact and Conclusions of Law filed by the court, and remand to the court for a determination of the economic interest in the copyrights to which Respondent is entitled. The Divorce Decree is affirmed in all other respects.